Chalpin Realty SC, LLC v. Marcus and Millichap Real Estate Investment Services Inc. Chalpin Realty SC, LLC v. Marcus and Millichap Real Estate Investment Services Inc. Your Honors, we're here because the district court erred by dismissing the FAA's Section 10 petition on two procedural grounds. The first being res judicata, and the second being untimely service under Section 12 of the FAA. The right to seek, and I'd like to touch on first the res judicata, and then I will discuss the service issue. The right to seek vacatur accrued post award. Well, it doesn't make – I'm sorry to interrupt, but doesn't it make more sense to do it the other way? Your Honor, I'm happy to address the Section 12 issue first. I know that's a fairly technical argument, but if we affirm on that ground, we don't need to get into the more complicated area of res judicata. It would seem to me. Your Honor, I am happy to touch on Section 12 then first. Section 12 functions as a non-jurisdictional limitations rule subject to waiver and estoppel. The district court's dismissal for a brief six-day delay disregarded the party's so-ordered stipulation, the communications that went on between counsel before the deadline accrued. The award issued by the arbitrator was issued on March 4th. The time to serve was June 4th. Counsel for appellant contacted counsel for respondent on May 28th and discussed with counsel that a filing was imminent, that there would be a filing to challenge the award. And so what? I mean, the rule is about service, and so I guess I'm just trying to – your view is that if there's lots of contact, then you don't need to comply with the service requirements? No, Your Honor. Our contention is that there should be equitable considerations given to – Okay, so what's the equitable consideration? What excuses the non-compliant? Absolutely. So there was communications between counsel prior to the service deadline. Not an agreement that you could have more time. The agreement occurred post-service deadline by way of the stipulation that was entered into between counsel on June 24th. And in that agreement, counsel for respondent accepted service and waived – But it doesn't mean that we've waived any defense on failure to serve timely, does it? They waived their personal jurisdiction defenses. And so we contend that under – and looking at the totality of the equities here, kind of similar to how your – So your view is that a timeliness argument is a personal jurisdiction argument? Timeliness argument is a statute of limitations issue. And so we are contending – That's why it's a personal jurisdiction. Well, because – It's a pretty tight waiver that says, you know, other than personal jurisdiction, we're not waiving anything. So it seems to me we ought to be reading it pretty narrowly, which is not expansively the way you would be suggesting. Well, Your Honor, again, and that's why we explain to the court and go through the totality of the communications that went on pre-service deadline and post-service deadline. But you're saying that they sandbagged you? I am – I was not a part of those communications. And so I can only argue on behalf of a former colleague of mine that it did feel a little unfair how that communication went down. It seems to me like if the deadline is June 4th, then you say in a communication, listen, June 4th is the deadline, so we're either going to hustle, get ourselves a process server and come serve you, or you can waive service or accept service or give us more time to do it or deem this to be acceptance, you know, service. None of that happened, right? Well, it didn't happen exactly as Your Honor just stated it. What happened was that there was pre-deadline communications about the filing that was imminent, that service would be commencing. Would he accept service? And the statement at that time was, well, I'm not going to – the filings for vacatur, and then there was a follow-up on May 29, and then a subsequent follow-up on June 3. And as my former colleague attested to in his declaration, he then commenced service on June 3 by providing it to the process server. Now, we don't deny that there is a six-day delay between the June 4 date and the date of actual service on June 10. But again, when you look at Your Honor's sister courts in both the Ninth and Eleventh Circuits where they look at the Holland factors and look at where equitable tolling is appropriate, and again, you look at the totality of the circumstances. But equitable tolling usually is if there's a good reason why a particular deadline wasn't complied with. You're just saying, like, ah, we shouldn't care that much because, you know, there was notice and, you know, they were already kind of talking. And I've never seen anything to suggest that that's a basis for equitable tolling. It's not that you shouldn't care. It's, you know, again, Your Honor, I wouldn't put it the way you did, that it felt unfair how the communications went back and forth. But there was a belief, even up to June 3, that they would be accepting service because the case had been heavily contested and litigated for years. I mean, you're talking about several years. It's that you didn't make service until later, right? The service was made six days later. I mean, when you – and again, you know, we're not talking about prejudice here, which is, again, a part of the Holland factors when you begin to look at the totality of the circumstances. And again, I have to note that in the stipulation that was entered into, it wasn't one, but it was two stipulations. And in that stipulation, it was agreed upon that we would have all sorts of briefing deadlines and extensions on briefing deadlines. So, you know, the purpose is to litigate on the merits. And so, you know, similar to how the Ninth and Eleventh Circuits looked at the totality of those circumstances in determining whether or not equitable tolling was appropriate, you know, the point of the FAA and for arbitration in general is to encourage arbitration, not chill it and have these draconian measures where you miss a deadline and that's it when it's, you know, a couple of days and there was direct communication, multiple stipulations that were ordered by the lower court in terms of an acceptance of service and an acceptance to the personal jurisdiction of the court. I understand and appreciate that jurisdiction, personal jurisdiction is not a statute of limitations and I'm not arguing that. But when, again, you look at the totality of those circumstances, there is going to be an appropriate equitable tolling. And again, Your Honors, I have to say that I mean, again, it seems to me that what you're saying is it's just no big deal and I don't think that's equitable tolling. I mean, nobody prevented you or your client or prior counsel from doing this in a timely manner, right? Well, Your Honor, I will say that there was consideration by the client as to whether or not they would even be appealing in the first instance. You know, this was years long of litigation in multiple jurisdictions. They had time to decide what they want to do, but they also have to do it within a certain That's the whole point is we want these things to move. That's why it's a pretty tight time frame to decide whether you're going to appeal. I understand that and that's why in the Gauthier case from the Southern District in 1990, the court looked at how the attorneys communicated with one another. You know, these were direct communications between attorneys and then ultimately a stipulation entered into where they did accept service of process. And no, it wasn't just a merely I accept service of process. It was a waiver as to personal jurisdictional defenses, which, yes, we believe when you look at that stipulation and how the attorneys were communicating, the notice that they were on with respect to the actual vague interpretation in the first instance, and, again, looking at the totality of those circumstances, there's not going to be a perfect fact pattern, as Your Honors have noted in the Dallalonga case in 2022, where there's going to be just a simple, yes, this is the fact pattern that now shows that we should look at equitable considerations. But, again, when you're talking about this level of communication between attorneys regarding a case about a petition that was going to be filed in a case that was contested over years, it isn't prejudicial to the other side to then have the merits of that petition be heard. And that is what we're contending here today, is that, yes, the lower court erred in looking at the totality of those circumstances. And, yes, I understand that this circuit has not yet actually examined the issue of equitable tolling. But, as I mentioned, in both the Ninth and Eleventh Circuits, those courts have now looked at circumstances where it is appropriate. And, yes, we do believe that this is a reasonable fact pattern for this Court to consider now for the equitable tolling principle. I see I am way out of time. I apologize, Your Honors.  Thank you so much. I'd like to hear back from you again. Mr. Joseph. Good morning, Your Honors. Alan Joseph. I have the pleasure of representing Marcus Similichap and may it please the Court. Your Honors, in your question, it hit most of what I had to say. I mean, this is not an extraordinary case. I'd like to start off by reminding Your Honors of what you already know, and that is the standard of review. And the standard of review here in determining whether or not equitable relief should be granted, which is what they're asking for is they're saying that there should be equitable tolling, that has to be an abuse of discretion. And I'd also remind Your Honors again what you already know, the facts that the District Court undertook has to be reviewed based on clear error. Having said that, I'm going to just point out again what the District Court noted three times in her opinion when reviewing the facts. She said three different times, once when reviewing the discussion on the law itself, once when going through the analysis for the equitable issues that were raised on res judicata, and then, of course, once when dealing with the issue of equitable tolling, that she reviewed all of the facts in the record with a light most favorable to Chalpin. I know that Chalpin's brief routinely said that the Court made factual assumptions in Marcus Milchap's favor, but the Court explicitly noted on three different occasions on each instance that she actually read the record in a light most favorable to Chalpin. So jumping into exactly the equities here under the standard of review, there's two issues that the Court needs to review in determining whether or not to equitably toll. And again, the first question that we need to decide is whether or not this three-month statutory period is even subject to inequitable tolling. And that, under the Flores v. Pickles case, the Second Circuit case, I believe in 1984, said it is not. And in that case, they went through a legislative history and a deep analysis in determining that it's not. But even assuming it is. I'm so sorry? Let's just assume that equitable tolling is the claim processing rule. Sure. So the second question is, in equity, did the Chalpins establish sufficient facts to justify that some extraordinary event precluded them from effecting service? And of course, none of that is in the record. The district court made the findings that there was nothing that prevented them from hiring a process server, going to a known address of a publicly traded company that was easy to find, and serving that process within the time frame. I mean, the fact, what they're trying to say is they reached out to counsel, they reached out to me, and they said, hey, would you accept service? I was not licensed in New York, and this is all in the record. So I said, I don't know. I have to check with my client, number one, whether they would even hire me for a vacator proceeding, and two, whether they would accept service. And within a span of three or four days of going back, we told them, and within the time still for them to effect service, we said no. And when I told them, we said no, because they didn't even bother with the courtesy of sending us the actual petition. So my client didn't give me the authority, and we told them, I don't have the authority. Effect service. That was before that June 4th date even took place. So then they went around their merry way, and then they got a process server, and this is again all in the record, and then they made bad service. On June 10th, they effected service by handing a receptionist an envelope. That's when we first got notice of the action. Now, if you look in the record, at 793, their counsel notes that when we started talking about, sorry, we said at that point we had hired a local New York lawyer who reached out and said, you know, let's get started with this. And they negotiated a stipulation. And in that negotiation, they put in, as it's in the record, that they wanted all defenses, that they wanted us to waive all of the defenses. And what we responded is, well, we'll accept service, and we'll certainly agree that we're not going to contest personal jurisdiction because that would be specious, but we are reserving all other defenses. And then they came back at, again, 793, and they said, well, you know, we're concerned because the service we made on June 10th was questionable, and we don't want that service to come back and bite us. At which point our lawyer, the New York lawyer, again, it's all in the record, said that would be something we're not doing because we are now accepting service. And so that's what that stipulation says. And under the parallel evidence rule, you don't even need to look at anything else. It's pretty clear, guys, judges. We said we would accept service. We're not going to contest personal jurisdiction, and we are reserving all other defenses. All other defenses certainly includes whether or not the statute of limitations or timeliness of service. Well, it does in terms of a matter of semantics. I guess there's nothing in the record to suggest that there was any discussion about timeliness being waived, right? There was never a question brought to us whether we would waive timeliness, and we would never have waived it. Is there anything to suggest that the timeliness defense was something that was already on your radar? There's nothing in the record to suggest that the timeliness defense was on our radar, Judge. And if you want to put me under oath, Judge, I'm happy to actually answer those questions. No, no, no. We're not factoring. I'm asking. I mean, it wasn't even on our radar at that time when we dove into things the defenses developed. But there's nothing in the record to indicate that you sandbagged them or lulled them into missing a deadline so that because you had your eye on the calendar and you knew they did. Far, far, far from it. You'll see in the emails, Judge, that as soon as I'm contacted, I respond within an hour or so every time. You know, the only delay was when they contacted me on a Friday. I waited until Monday, which is when I heard back from my client, to respond to them. And that's my practice. I try to respond as timely as possible on everything. And when you look at the equitable tolling, it's not just, well, you know, I might have missed something. I'd like to suggest to you, Your Honors, to look at the newvasive case that counsel, that Chalpin briefs, and we certainly have noted it. It's an Eleventh Circuit case, and that talks about extraordinary circumstances. That is, as that case said, one of the rare, shocking cases that allowed it. In thevasive, that was a court that compelled arbitration on some issues and reserved to come after the arbitration was stayed to continue trying the case. The parties arbitrated the case. They came back and they said, we have an award, but we now would like to go and lift the stay and continue the arbitration and continue the litigation on the remaining issues. And so they did. And discovery went about. And during the course of discovery, the plaintiff in that case discovered that the defendant engaged in rampant fraud during the course of the arbitration. It was a remote arbitration. And what they discovered in text was that the principal was giving the answers to the witnesses. And so they moved. So upon learning that the testimony was fraudulent under oath, that it was not independent, they went to the district court and they asked for two things. They said, one, we know that the three months had long since expired, but we want you to extend equitably the tolling period to equitably toll the period because we had no ability to know that there was grounds to seek a vacator. We only just learned it. And they only just learned it because not only did the defendant hide the information they found in discovery, but then even in the discovery they prolonged it and tried to go and dance around producing the documents. And, two, based upon that, you know, they moved to vacate it because of the fraud in the arbitration. And the Eleventh Circuit, which is certainly not bound by the Second Circuit principle that does not extend it, went on to say that this is the movement was because of these extraordinary circumstances that were both beyond his control and unavoidable even with due diligence. None of the facts are present here. There was nothing that stood in their way from making service. There was nothing that made their service unavoidable even with due diligence. Another case I'd point to, Your Honor, to review is a case that the parties actually disagree on, and that's the Argentine case from the D.C. Circuit. We read the case substantially different than they do. The Argentine Republic case we view as saying that the three-month deadline is not capable of being extended. In that case, the Argentine Republic moved for an extension of time to serve the defendant within the period of time. And the Court denied that motion and said, we can't even give you the extra time, even though you tried with due diligence to serve it, because we read the statute as not able to be extended. The Chalpins read that case substantially differently in their reply brief at pages 16 to 17 to say that the Argentine case said that they were going to look at the equities, including issues of whether or not there was prejudice. We don't see that in that case. We read it diametrically opposed. And, of course, we would invite Your Honors to review that and make your own opinions on that. We didn't talk at all about res judicata. I'm going to stand on my brief, and thank you. All right. Thank you. Mr. Miller, you have three minutes for rebuttal. Thank you, Your Honors. Sorry, just resetting up again. Your Honors, clearly we were going to be just focused on the equitable tolling issue. I again want to point the Court to the Gauthier case, which I understand has no precedential value in this court. But as I argued on my direct, looking at the equities requires a looking at the totality of the circumstances, and that's actually what happened in the Gauthier case. No, no, there's no totality. There's no totality of the circumstances. And it seems to me that your best argument is that you guys were talking. Well, no, we were not. So what's the best argument? I mean, how were you prevented from a timely filing, a timely service? Again, Your Honor, it was a conversation with counsel regarding acceptance of service. And as attested to by my former colleague, he did commence service within the time frame, and it was a matter of just the process server not actually getting over to the offices of the respondent by June 4th. Having said that, subsequent thereto, the parties did enter into a stipulation, which I understand Your Honors are reading to say that it was only related to an acceptance of service, but that is not what the parties were discussing. And if you look at the e-mail communications that went on between counsel and not Mr. Joseph over here, but his local counsel in the record A757 to A764, you'll see that there was discussion about not just acceptance of service, but a waiver as to personal jurisdiction. So he cannot now come in after the fact and start claiming that the court does not have any right to review a vacatur petition when the parties expressly agreed that they were accepting service. The issue is file and service. After the deadline. But they were also then simultaneously waiving the defenses to personal. The defense of timeliness? I mean, we've been through this before. They didn't make that waiver. You're insisting that personal jurisdiction is the same as timeliness, and then when I press you on it, you say, no, they're not the same. But nonetheless, the waiver with respect to personal jurisdiction ought to be construed as including a waiver of the defense of untimeliness. How does that work? It works in the context of the communications that went on between counsel both before the deadline and after the deadline. It was an implied waiver? It was not an implied waiver. It was an understanding, maybe a misunderstanding, but an understanding nonetheless that when the parties were entering into the stipulation that the respondent was accepting service and therefore was not challenging the file and service deadline. Accepting service and therefore not challenging the late service. That's what you're saying? We are saying that the stipulation entered into between the parties. Not the stipulation. So I guess, I mean, it just boils down to what is the proper interpretation of it. All right. Anything else you wanted to say? No, Your Honors. I'll obviously stand on the rest of my case. Great. Thank you, Coach. We will reserve decision.